UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL ANGEL MAGANA,<br><br>                    Plaintiff,<br><br>        v.<br><br>MICHAEL MARTLE,<br><br>                    Defendant. | No. 2:08-cv-1706 TLN DAD P<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on March 25, 2005 in the San Joaquin County Superior Court on charges of conspiracy to commit murder, burglary and robbery, with sentencing enhancements for discharging a firearm causing injury to each victim of those offenses, and first degree burglary of an occupied residence with use of a firearm and two great bodily injury sentencing enhancements.  He seeks federal habeas relief on the grounds that he was denied the constitutional protection against double jeopardy because the trial court erroneously:  (1) admitted evidence at the trial which resulted in his conviction that he was a perpetrator or aider and abettor in the murders and robbery; and (2) imposed the use of a firearm sentencing enhancements.

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be granted.

## I. Procedural Background

Petitioner was charged in a Third Amended Information filed in the San Joaquin County Superior Court on February 14, 2005 as follows:  in Count 1 with the murder of Kevin Dahnke, with an enhancement for personally discharging a firearm causing injury, and the special circumstances of murder for financial gain, multiple murder, murder in the commission of a robbery and murder in the commission of a burglary; in Count 2 with the murder of Sabrina Dahnke, with an enhancement for personally discharging a firearm causing injury and the special circumstances of murder for financial gain, multiple murder, murder in the commission of a robbery, and murder in the commission of a burglary; in Count 3 with conspiracy to commit murder, robbery and burglary with four overt acts alleged to have been committed in furtherance of the conspiracy and with two enhancements for personally discharging a firearm causing injury to each of the two victims; in Count 4 with first degree home invasion robbery with two sentencing enhancements for personally discharging a firearm causing injury to each victim; in Count 5 with  first degree residential burglary with two sentencing enhancements for personally discharging a firearm causing injury to each victim; and in Count 6 with misdemeanor possession of marijuana.  (Clerk's Transcript on Appeal (CT) at 384-96.)

At his first trial on these charges, the jury found petitioner not guilty on Counts 1, 2, and 4, but was unable to reach a verdict on Counts 3 and 5.  Accordingly the trial judge declared a mistrial as to these latter two counts with respect to petitioner.

Thereafter, the prosecution filed an amended information charging petitioner in Count 1 with conspiracy to commit murder, burglary and robbery with the specified overt acts committed in furtherance of the conspiracy, with two sentencing enhancement allegations for personal firearm discharge causing injury to each victim, one firearm use enhancement, and two great bodily injury enhancements, and in Count 2 with first degree burglary of an occupied residence with sentencing enhancements for use of a firearm and two enhancements for causing great bodily injury.

On March 25, 2005, at the conclusion of petitioner's second trial, the jury returned guilty verdicts against him on both counts of the amended information and found all of the enhancement

2

allegations brought against him to be true.  Pursuant to those convictions and findings, the trial court sentenced petitioner to 75 years to life in state prison.  Specifically, as to Count 1 of the amended information petitioner was sentenced to 25 years to life in prison plus two consecutive 25 years to life terms on each enhancement and as to Count 2 petitioner was sentenced to 6 years in state prison with both that term and all enhancements stayed.

Petitioner appealed from his judgment of conviction.  The California Court of Appeal for the Third Appellate District affirmed his judgment of conviction in an unpublished opinion.  See People v. Magana, Case No. C049955, 2007 WL 1277191 at *1 (Cal. App. 3d Dist. May 2, 2007).

## II. Factual Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> After two individuals were shot and killed in their home, an information charged defendant Joel Angel Magana and a codefendant, Christopher Jones, with murder, robbery, burglary and conspiracy to commit these crimes.  (Pen. Code, §§ 182, 187, 211, 459; unspecified statutory references that follow are to the Penal Code.)  In a first trial, the jury acquitted defendant of murder and robbery, but could not reach a verdict on the charges of burglary and conspiracy. (The jury hung on the conspiracy charge as to codefendant Jones as well, but convicted him on all other counts.)
>
> Defendant was retried on the two unresolved charges of burglary and conspiracy to commit murder, robbery and burglary.  The jury convicted defendant of both offenses and found the charged firearm enhancements to be true.  (§§ 12022.53, subd. (d), 12022.5, 12022.7.)  The trial court sentenced defendant to an aggregate prison term of 75 years to life.
>
> On appeal, defendant contends that the earlier acquittals on the murder and robbery charges precluded the introduction in the second trial of any evidence that defendant perpetrated the murder or robbery, or aided and abetted their commission.  In a similar vein, he argues that principles of double jeopardy preclude the sentence enhancements for firearm discharge under section 12022.53.  We disagree and affirm the judgment.
>
> ### Facts and Proceedings
>
> Given the nature of the claims on appeal, we provide only an abbreviated synopsis of the underlying events.  As noted, two

3

individuals were shot and killed in their home. An information charged defendant and Christopher Jones with both murders, as well as robbery, burglary and conspiracy to commit murder, robbery, and burglary. The jury acquitted defendant of the murder charges and robbery, but was unable to reach a verdict on the remaining burglary and conspiracy charges.

In retrying defendant on these two counts, the prosecution introduced testimony from investigators, forensic experts, and a number of other witnesses, including Scott F. (Scott), a friend of defendant's. Scott recounted conversations with defendant in which defendant described in detail his participation and involvement in the attack.

Defendant testified at trial. He said he went to the victims' house with Jones in order to purchase marijuana. While they were there, Jones pulled out guns, shot and killed both residents, and took marijuana. Defendant claimed he knew nothing of Jones's plans, and that these events took him completely by surprise.

The jury convicted defendant on both counts-burglary and conspiracy to commit murder, robbery, and burglary-and found the charged firearm enhancements to be true. The trial court sentenced defendant to an aggregate prison term of 75 years to life, and this appeal followed.

Id.

## III. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

1            (2) resulted in a decision that was based on an unreasonable
2  determination of the facts in light of the evidence presented in the
State court proceeding.

3        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

4  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

5  Greene v. Fisher, ___ U.S. ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859

6  (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent

7  "may be persuasive in determining what law is clearly established and whether a state court

8  applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561,

9  567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general

10  principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

11  not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing

12  Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to

13  "determine whether a particular rule of law is so widely accepted among the Federal Circuits that

14  it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further, where courts

15  of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly

16  established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

17        A state court decision is "contrary to" clearly established federal law if it applies a rule

18  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

19  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

20  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

21  writ if the state court identifies the correct governing legal principle from the Supreme Court's

22  decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]  Lockyer v.

23  Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

24  (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

25  concludes in its independent judgment that the relevant state-court decision applied clearly

26  _____

27  [1]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28  384 F.3d 628, 638 (9th Cir. 2004)).

1    established federal law erroneously or incorrectly.  Rather, that application must also be

2    unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

3    (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

4    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

5    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

6    'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

7    Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

8    Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

9    must show that the state court's ruling on the claim being presented in federal court was so

10    lacking in justification that there was an error well understood and comprehended in existing law

11    beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

12       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

13    court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

14    527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

15    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

16    2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

17    de novo the constitutional issues raised.").

18       The court looks to the last reasoned state court decision as the basis for the state court

19    judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

20    If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

21    previous state court decision, this court may consider both decisions to ascertain the reasoning of

22    the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

23    federal claim has been presented to a state court and the state court has denied relief, it may be

24    presumed that the state court adjudicated the claim on the merits in the absence of any indication

25    or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption

26    may be overcome by a showing "there is reason to think some other explanation for the state

27    court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

28    (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

1    does not expressly address a federal claim, a federal habeas court must presume, subject to

2    rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S.

3    ___,___, 133 S. Ct. 1088, 1091 (2013).

4         Where the state court reaches a decision on the merits but provides no reasoning to

5    support its conclusion, a federal habeas court independently reviews the record to determine

6    whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

7    Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

8    review of the constitutional issue, but rather, the only method by which we can determine whether

9    a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

10   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

11   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

12        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

13   Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

14   just what the state court did when it issued a summary denial, the federal court must review the

15   state court record to determine whether there was any "reasonable basis for the state court to deny

16   relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

17   have supported, the state court's decision; and then it must ask whether it is possible fairminded

18   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

19   decision of [the Supreme] Court."  562 U.S. at 102.  The petitioner bears "the burden to

20   demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v.

21   Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

22        When it is clear, however, that a state court has not reached the merits of a petitioner's

23   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

24   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

25   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

26   /////

27   /////

28   /////

**IV. Analysis**

    A.  <u>Petitioner's Claims</u>

    Petitioner contends that the trial court violated his constitutional rights when at his second trial the court: (1) admitted evidence that he was a perpetrator or aider and abettor in the murders and robbery, and (2) following his conviction imposed personal firearm use enhancements in sentencing him. (Dkt. No. 5 at 4.) Petitioner argues that because he had already been acquitted by a jury of the murder and first degree robbery charges at his first trial, the trial court at his second trial should have applied the collateral estoppel doctrine to preclude the admission of testimony that he was in fact guilty of murder and/or robbery as a principal or as an aider or abettor. (<u>Id</u>. at 51.) Petitioner contends that the "first jury definitely made findings of fact on the ultimate issues that appellant did not actually kill or aid and abet the killings and the robbery." (<u>Id</u>. at 54.) Petitioner concludes that "[n]o rational jury could have could have found under the instructions given at the first trial that appellant was one of the shooters and had intentionally discharged a firearm causing great bodily injury or death to the victims without also finding that he had at least aided and abetted the killings and robbery." <u>Id</u>. at 29.

    B.  <u>The State Court Decision</u>

    On appeal, petitioner advanced these same arguments, contending that the trial court erred in admitting evidence at his second trial related to his "involvement in a murder or robbery as a perpetrator or an aider or abettor" since he had been acquitted of the murder and the robbery at his first trial. <u>Magana</u>, 2007 WL 1277191 at *2. However, the state appellate court found that petitioner had failed to raise this argument in the trial court, and was therefore precluded from raising the argument on appeal. <u>Id</u>. On appeal, petitioner argued, in the alternative, that if this were in fact the case his trial counsel had provided ineffective assistance by failing to raise this argument below.[2] <u>Id</u>. at *3. The California Court of Appeal rejected this argument as well, finding that trial counsel's performance was not deficient because there was no valid collateral estoppel argument to be made below on petitioner's behalf. The state appellate court explained:

---

[2]  Petitioner does not raise a claim of ineffective assistance of counsel in the petition before this court. ECF No. 5 at 4-5.

8

As we have already noted, the theory of collateral estoppel precludes the relitigation of an issue of ultimate fact. (People v. Catlin, supra, 26 Cal.4th at pp. 123-124; Ashe v. Swenson (1970) 397 U.S. 436, 443 [25 L.Ed.2d 469, 475].)  The ultimate facts in the charges for which [petitioner] was acquitted in the first trial – murder and robbery – are different from the ultimate facts at issue in the retrial.  Here, the issue is not whether defendant participated in (or aided and abetted) the murders and/or a robbery.  Rather it is whether defendant (1) committed a burglary and (2) conspired to commit murder, robbery and burglary.

The fact that defendant was acquitted of robbery has no bearing on whether defendant committed a burglary.  "Robbery" is defined as the "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  [citation omitted.]  In contrast, "burglary" involves an entry (here, into a house) "with intent to commit grand or petit larceny or any felony."  [citation omitted.]  The ultimate facts at issue in each charge are different from those at issue in the other.

The same is true of the conspiracy charge.  The jury's verdicts acquitting defendant of murder and robbery does not mean that defendant could not be found guilty of conspiring to commit these offenses.

"A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy."  [Citations.]  [¶]  Criminal conspiracy is an offense distinct from the actual commission of a criminal offense that is the object of the conspiracy.  [Citations.] ...  'Conspiracy is an inchoate crime.  [Citation.]  It does not require the commission of the substantive offense that is the object of the conspiracy.  [Citation.]" (People v. Morante (1999) 20 Cal.4th 403, 416-417, fn. omitted.)  "[I]t is well settled in California that a conspiracy conviction will stand even though the defendant is acquitted of the substantive crime." (People v. Peppars (1983) 140 Cal.App.3d 677, 688.)

Thus, the ultimate issues involved in a prosecution for murder and robbery are different from the ultimate issues involved in a prosecution for conspiracy to commit those crimes.  In the former case, the issue is whether defendant committed substantive crimes; in the latter, it is whether defendant entered into an agreement to commit these crimes and committed overt acts in furtherance of the conspiracy.

Id. at *3.  The California Court of Appeal cited the decision in Dowling v. United States, 493 U.S. 342, 348 (1990), for the proposition that the collateral estoppel doctrine does not prohibit the admission of evidence that has been introduced in a trial resulting in an acquittal from being

9

1    admitted for all purposes in a subsequent trial proceeding.  Id. at *4.

2              The state appellate court also rejected petitioner's claim that his acquittals on the murder

3    and robbery counts at his first trial prohibited him from being charged with enhancements for

4    "personally and intentionally discharg[ing] a firearm, causing great bodily injury or death" at his

5    second trial.  Id. at *5.  In rejecting petitioner's argument on this point the California Court of

6    Appeal stated as follows:

7              Again, we emphasize that different offenses were at issue in the two
          trials.  The jury in the first trial never reached the question of
8         whether defendant discharged a firearm and caused great bodily
          injury or death in the commission of the murder or robbery because
9         it acquitted defendant of those two offenses. [citation omitted.]  The
          jury would have considered these enhancements only if it had
10        convicted defendant of these substantive offenses.

11        The enhancement alleged in the second trial presented a different
          question for the jury, namely, whether defendant discharged a
12        firearm and caused great bodily injury or death in the commission
          of a conspiracy.  The fact that defendant was acquitted of murder
13        and robbery has no bearing on whether firearm discharge
          enhancements can be alleged in conjunction with the entirely
14        different offense of conspiracy.

15        In arguing otherwise, defendant contends that the acquittals in the
          first trial meant that the jury necessarily determined that defendant
16        did not personally and intentionally discharge the firearm and cause
          great bodily injury or death. We do not agree with defendant's
17        logic.  We only know that the first jury found that the prosecution
          had not met its burden of proving defendant guilty of murder or
18        robbery beyond a reasonable doubt.  We do not know why.  The
          jury may have believed that defendant planned to rob the victims
19        with Jones, but withdrew from that plan upon arriving at the house,
          negating any liability on a conspiracy theory.  The jury may have
20        declined to find defendant guilty of murder on an aiding and
          abetting theory because defendant did not know of or share Jones's
21        intent.  The jury may have determined that defendant had nothing
          whatsoever to do with the shootings.  It is also possible that the jury
22        simply exhibited lenience, or engaged in jury nullification.  The
          point is we do not know why the jury returned the verdicts that it
23        did.    What we do know is that nothing in these verdicts
          conclusively established that defendant did not discharge a firearm
24        and cause great bodily injury or death in the commission of a
          conspiracy to commit murder, burglary, and robbery. Under these
25        circumstances, the enhancements in the second trial were proper.

26                                    * * *

27        [I]t is conceivable that, in acquitting defendant of murder, the jury
          concluded that defendant shot one or both of the victims, but the
28        shooting did not satisfy the requirements for murder beyond a

                                        10

reasonable doubt.   For example, it is conceivable the jurors concluded that they could not rule out that defendant's shots were fired as reflexive reaction to codefendant Jones's shooting of the victims and only after Jones inflicted the fatal wounds, and that the gunshots were fired by defendant without intent to kill and in a manner that would not have resulted in death to either of the victims.   As pointed out above, it is also conceivable the jury concluded that defendant never had the intent to commit robbery, and that not all of the jurors believed that he had the intent to commit burglary – thus, it was not established that his act of shooting one or both victims was done in furtherance of such a purpose.   And it is conceivable that the jury found that defendant did not aid and abet Jones in the commission of the killing, with knowledge of Jones's unlawful purpose and with the intent to aid, promote, encourage, or instigate the killing and, thus, that Jones's act of inflicting the fatal shots was not a natural and probable consequence of a common plan.   If the jurors made these findings or could not rule out such a scenario, the instructions they were given would have compelled the jurors to acquit defendants of second degree murder if they found, or could not rule out, that he intentionally shot one or both of the victims only after Jones inflicted the fatal wounds, and the shots fired by defendant were not life-threatening and, thus, in the jurors' view, were not done in a way that necessarily meant the natural consequence of the shooting was dangerous to human life.

While this scenario is speculative, the point is that it is conceivable and, hence, it is just as speculative to say the jury necessary [sic] found that defendant did not shoot either victim.   Stated in another way, the verdicts in the first trial did not conclusively establish that he did not intentionally and personally discharge a firearm, proximately causing great bodily injury to one or both victims. Consequently, the People were not precluded from retrying him on the section 12022.53, subdivision (d) enhancement, and the court did not err during the second trial by allowing the prosecutor to introduce evidence that defendant shot the victims.

Id. at *5-7.

C.  Evidence and Instructions at Petitioner's First Trial

The prosecution's key witness at petitioner's first trial was Scott Fausett.  At that first trial Fausett testified as follows.  About a month before Kevin and Sabrina Dahnke were killed, petitioner, Brandon Berreth and he had discussed robbing Kevin.  (Aug. RT at 764.)  Petitioner said that he could get guns.  (Id. at 765.)  The next day petitioner told Fausett that he had the guns, but Fausett told petitioner that he no longer wanted to rob Kevin.  (Id.)  Petitioner said that he would get Jones to do it.  (Id. at 766.)  Fausett later saw petitioner and Jones with two guns at Jones' apartment.  (Id. at 768.)  Petitioner also showed Fausett potatoes, stating that he was going

11

1   to put them over the barrel of the gun, apparently as a makeshift silencer, and shoot and kill

2   Kevin and Sabrina.  (Id. at 782.)  The morning after the shooting petitioner came to Fausett's

3   apartment, limping, carrying a bag of marijuana and with blood behind his ear.  (Id. at 789.)

4   Later, Fausett watched the news with petitioner and saw the broadcast of the crime scene at Kevin

5   Dahnke's house.  (Id. at 795.)  Petitioner commented "[t]hat was two down and two to go."  (Id.)

6        At his first trial petitioner testified on his own behalf as follows.  Petitioner went to Kevin

7   Dahnke's apartment with Jones to buy some marijuana.  (Id. at 1180.)  Jones fired a gun over

8   petitioner's shoulder, with a potato on the barrel, shooting Kevin in the chin.  (Id. at 1190.)  Kevin

9   lunged at petitioner and put his hands on petitioner's arms and shoulders.  (Id. at 1192.)  Sabrina

10  Dahnke came running into the room and screamed.  (Id. at 1193.)  Jones then shot Sabrina and

11  she fell to the ground.  (Id.)  Petitioner fell to the ground with Kevin on top of him and heard "all

12  kinds of gunshots."  (Id. at 1193, 1197.  After the shooting petitioner ran out to his car and drove

13  away, but then turned around to go get Jones.  (Id. at 1201.)  Jones got in the car, pulled a gun on

14  petitioner, and made him drive to Pittsburgh, California.  (Id. at 1202.)  Jones gave petitioner

15  money and marijuana and threatened him.  According to petitioner's testimony, he did not shoot

16  any guns, did not intend to rob Kevin or Sabrina, and did not know that Jones had guns when they

17  went to the Dahnkes' apartment.  (Id. at 1194.)

18       The jury at petitioner's first trial was instructed that one who aids and abets another in the

19  commission of a crime or crimes is not only guilty of that crime but also guilty of any other crime

20  committed by a principal which is a natural and probable consequence of the crimes originally

21  aided and abetted.  (Aug. RT at 1511.)   With respect to the murders of Kevin and Sabrina

22  Dahnke as charged in Counts 1 and 2 of the original Information, petitioner's jury at his first trial

23  was also instructed that petitioner was guilty of murder if it was proved beyond a reasonable

24  doubt that:  (1) the crime of robbery was committed; (2) petitioner aided and abetted the

25  commission of that crime; (3) a co-principal committed the crime of robbery; and (4) the crime of

26  murder was a natural and probable consequence of the crime of robbery committed.  (Id.; CT at

27  605.)  That jury was further instructed that every person who unlawfully kills a human being with

28  malice aforethought or during the commission or the attempted commission of a residential

1   burglary or robbery is guilty of the crime of murder, as defined by the following elements:  (1) a

2   human being was killed; (2) the killing was unlawful; and (3) the killing was done with malice

3   aforethought or occurred during the commission or attempted commission of robbery or

4   residential burglary, a felony inherently dangerous to human life.  (Aug. RT 1515-16.)

5          As to the conspiracy to commit murder, robbery, and residential burglary charged against

6   petitioner in Count 3, the jury at his first trial was instructed that the elements of the charged

7   offense were:  (1) There was a conspiracy to commit murder, robbery, and burglary; (2) the

8   defendant willfully, intentionally, and knowingly joined with others in the conspiracy; and (3)

9   that an overt act in furtherance of the conspiracy was committed by one of the conspirators.  (Id.

10  at 1531.)  With respect to the robbery charged in Count 4, the jury was instructed that the

11  elements of that offense were:  (1) A person had possession of property of some value, however

12  slight; (2) the property was taken from that person or from his or her immediate presence; (3) the

13  property was taken against the will of that person; (4) the taking was accomplished by force or

14  fear; and (5) the property was taken with the specific intent permanently to deprive that person of

15  the property.  (Id. at 1534.)  The jury at petitioner's first trial was also instructed that for the

16  purpose of determining whether a defendant was guilty as an aider and abetter to robbery, the

17  commission of the crime of robbery is not confined to a fixed place or a limited period of time,

18  and continues as long as the stolen property is being carried away to a place of temporary safety.

19  (Id.)  Finally, as to the residential burglary charged in Count 5, the jury at petitioner's first trial

20  was instructed that the elements of that offense were:  (1) defendant entered a building; and (2) at

21  the time of entry, he had the specific intent to steal and take away someone else's property and

22  intend to deprive the owner permanently of that property or commit murder.  (Id. at 1536.)

23         As noted above, the jury at petitioner's first trial acquitted him of the murders with which

24  he was charged in Counts One and Two and of the robbery charged against him in Count Four

25  and hung only on the conspiracy and residential burglary charges brought against him in Counts

26  Three and Five.

27  /////

28  /////

13

1

    D.  <u>Governing Law</u>

2

       The double jeopardy clause prohibits retrial for the "same offense" after an acquittal.  Two

3

offenses are considered the same offense for double jeopardy purposes unless each offense

4

requires proof of a fact that the other does not.  <u>Blockburger v. United States</u>, 284 U.S. 299, 304

5

(1932).

6

       In <u>Ashe v. Swenson</u>, 397 U.S. 436, 445-46 (1970), the Supreme Court extended the

7

protections guaranteed a criminal defendant by holding that the Double Jeopardy Clause

8

embodies the doctrine of collateral estoppel.  <u>Id</u>.  Collateral estoppel "means simply that when an

9

issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot

10

again be litigated between the same parties in any future lawsuit." <u>Id</u>. at 443.  In a criminal case,

11

collateral estoppel precludes the state from relitigating any ultimate facts resolved in the

12

defendant's favor by the prior acquittal.  <u>Id</u>. at 445-46.  Thus, "if the government's case depends

13

on facts found in defendant's favor by an acquittal, collateral estoppel precludes the Government

14

from attempting to reprove those facts and, hence, from retrying the defendant." <u>United States v.</u>

15

<u>Powell</u>, 632 F.2d 754, 757 (9th Cir. 1980).  Thus, in addition to being protected against retrial for

16

the "same offense" under the <u>Blockburger</u> standard, a criminal defendant is constitutionally

17

protected against prosecution for an offense that requires proof of a fact found in his favor in a

18

prior proceeding.  <u>Dowling v. United States</u>, 493 US 342, 356 (1990) (Brennan, J., dissenting).

19

       In evaluating collateral estoppel claims, courts are to follow a three step process.  First,

20

they are to identify the issues in the two actions to determine whether they are sufficiently

21

material and similar to justify invoking the doctrine; second, they are to examine the record in the

22

prior case to determine whether the similar issue was litigated; and third, they must examine the

23

record of the prior proceeding to determine whether the issue was necessarily decided in the first

24

case.  <u>Ashe</u>, 397 U.S. at 446; <u>United States v. Castillo-Basa</u>, 483 F.3d 890, 897 (9th Cir. 2007).

25

A criminal defendant invoking collateral estoppel as a bar to conviction bears the burden of

26

proving "that the issue whose relitigation he seeks to foreclose was actually decided in his favor"

27

in the prior case.  <u>Dowling</u>, 493 U.S. at 350.

28

/////

1    The collateral estoppel rule in criminal cases "is not to be applied with the hypertechnical

2    and archaic approach of a 19th century pleading book, but with realism and rationality." Ashe,

3    397 U.S. at 444.  A court confronted with such a claim must "examine the record of a prior

4    proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and

5    conclude whether a rational jury could have grounded its verdict upon an issue other than that

6    which the defendant seeks to foreclose from consideration." Id.  The inquiry "must be set in a

7    practical frame and viewed with an eye to all the circumstances of the proceedings." Yeager v.

8    United States, 557 U.S. 110, 120 (2009) (quoting Ashe, 397 U.S. at 444).  See also Sealfon v.

9    United States, 332 U.S. 575, 579 (1948).

10    The facts of Ashe provide a clear illustration of the proper application of the collateral

11    estoppel doctrine.  That case involved the robbery of six men at a poker game.  397 U.S. at 437.

12    The defendant was initially tried for the robbery of one of these six men; the only issue in dispute

13    was whether the defendant had participated in the robbery.  Id. at 438.  A jury acquitted the

14    defendant in his first trial because the evidence linking him to the crime was weak.  Id. at 439.

15    However, the prosecution thereafter charged the same defendant with the robbery of another one

16    of the six victims and this time obtained a conviction with improved eyewitness testimony.  Id. at

17    439-40.  The Supreme Court reversed the defendant's conviction because the jury at his second

18    trial could have convicted the defendant only by finding an ultimate fact - that defendant was one

19    of the robbers - in a manner contradicting the finding of the jury at his first trial.  Id. at 445.

20    In 2007, after the petitioner in this action was convicted at his second trial, the Ninth

21    Circuit explained the rationale for the collateral estoppel doctrine in the criminal context as

22    follows:

23        The Double Jeopardy Clause requires the government to put on its
24        strongest case the first time; it forbids it to conduct a series of
          prosecutions, involving the same fundamental issues, in which it
          presents additional arguments and evidence at each iteration . . . .
25        Under the Double Jeopardy Clause, the government may not take a
          mulligan.
26

27    Castillo-Basa, 483 F.3d at 893.

28    /////

15

Following its decision in Ashe, the Supreme Court next addressed collateral estoppel in the context of a criminal prosecution in Yeager v. United States, 557 U.S. 110 (2009). The defendant in Yeager was charged with several crimes, and the jury acquitted him at his first trial on some counts and was unable to reach a verdict on other counts resulting in a mistrial being declared as to the latter counts. The defendant was then re-indicted on some of the counts upon which the first jury had been unable to reach a verdict. Prior to his second trial, his motion to dismiss the re-filed charges on double jeopardy grounds was denied. The Fifth Circuit affirmed, reasoning that the logical inconsistencies between the acquittals and the hung counts meant that the government could again prosecute the defendant on the charges upon which the first jury had been unable to reach a verdict. The Supreme Court reversed, holding that given the facts of that case, the apparent logical inconsistencies between the first jury's decisions on the various charges did not undermine the preclusive effect of the acquittals. The Supreme Court in Yeager thus explained as follows:

> A hung count is not a "relevant" part of the "record of [the] prior proceeding." See Ashe, 397 U.S. at 444, 90 S. Ct. 1189 (internal quotation marks omitted). Because a jury speaks only through its verdict, its failure to reach a verdict cannot — by negative implication — yield a piece of information that helps put together the trial puzzle. A mistried count is therefore nothing like the other forms of record material that Ashe suggested should be part of the preclusion inquiry. Ibid.; see also Black's Law Dictionary 1301 (8th ed. 2004) (defining "record" as the "official report of the proceedings in a case, including the filed papers, verbatim transcript of the trial or hearing (if any), and tangible exhibits"). Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents. Even in the usual sense of "relevance," a hung count hardly "make[s] the existence of any fact . . . more probable or less probable." Fed. Rule Evid. 401. A host of reasons — sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few — could work alone or in tandem to cause a jury to hang. [fn. omitted] To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork. [fn. omitted] Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return.
>
> A contrary conclusion would require speculation into what transpired in the jury room. Courts properly avoid such explorations into the jury's sovereign space, see United States v. Powell, 469 U.S. 57, 66, 105 S. Ct. 471, 83 L.Ed.2d 461 (1984);

16

1
2
3
4
5
6

> Fed. Rule Evid. 606(b), and for good reason. The jury's deliberations are secret and not subject to outside examination. If there is to be an inquiry into what the jury decided, the "evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration." Packet Co. v. Sickles, 5 Wall. 580, 593, 18 L.Ed. 550 (1866); see also Vaise v. Delaval, 99 Eng. Rep. 944 (K.B.1785) (Lord Mansfield, C.J.) (refusing to rely on juror affidavits to impeach a verdict reached by a coin flip); J. Wigmore, Evidence § 2349, pp. 681–690, and n. 2 (McNaughton rev. ed.1961 and Supp.1991).

7  Yeager, 557 U.S. at 121-22.

8      Keeping these principles in mind, the undersigned finds the recent decision in Wilkinson

9  v. Gingrich, 800 F.3d 1062 (9th Cir. 2015) to be particularly instructive with respect to the issue

10  presented in this case.   In Wilkinson the Ninth Circuit concluded that the state court

11  unreasonably applied the rule of collateral estoppel when it upheld the defendant's perjury

12  conviction after his acquittal of a speeding offense in traffic court.  In that case, Wilkinson had

13  testified in the traffic court proceeding that he was not the driver of the vehicle that had been

14  stopped for speeding and whose driver had been ticketed by a highway patrol officer.  Id. at 1065.

15  At the court trial, he also produced a different driver's license bearing a somewhat different name

16  than that produced to the officer at the time of the stop.  Id.  This left even the citing officer with,

17  at least momentarily, a doubt as to whether Wilkinson was actually the driver of the vehicle he

18  had cited.  Id. The traffic court judge acquitted Wilkinson of the speeding charge.  Id.  The state

19  subsequently prosecuted Wilkinson for perjury after the arresting officer realized, following a

20  brief exchange with Wilkinson in the hallway after the court trial, that Wilkinson was, in fact, the

21  driver of the speeding vehicle.  In the subsequent perjury trial, several witnesses testified on the

22  issue of whether Wilkinson was the driver of the vehicle.  Further, the jury at Wilkinson's perjury

23  trial was instructed that "[t]he People allege that the defendant made the following false

24  statement: that he was not the driver of the vehicle . . . ."  Id. at 1066.  The jury convicted

25  Wilkinson of perjury.

26      The Ninth Circuit reversed Wilkinson's perjury conviction because the ultimate issue

27  presented in the subsequent perjury prosecution had already been found in Wilkinson's favor in

28  the earlier traffic court proceeding.  The court explained:

1
2
3
4
5
6
7
8
9

> The [California] Court of Appeal failed to recognize that the driver's identity was necessarily at issue in both the traffic and perjury prosecutions. In one sense, the State is correct in contending that the two proceedings posed different questions.   Narrowly construed, the question in the traffic court proceeding was whether Wilkinson was the driver of the speeding car, and the question in the perjury proceeding was whether Wilkinson gave false testimony in traffic court when he denied being that driver.  But the State is incorrect in contending that this difference means that collateral estoppel and the Double Jeopardy Clause do not apply. "[T]he jury need not directly decide the veracity of a defendant's testimony in the first trial for collateral estoppel to bar a subsequent perjury prosecution - it is enough that the jury decide an issue that is 'sufficiently similar' to an issue in the prospective second prosecution and that the similar issues are 'sufficiently material' in both instances." Castillo–Basa, 483 F.3d at 899 (citing United States v. Hernandez, 572 F.2d 218, 220 (9th Cir. 1978)).

10
11
12
13
14
15
16

Id. at 1068-69.  The Ninth Circuit concluded that "[t]he issue in the first case (whether Wilkinson was the driver) and the issue in the second case (whether Wilkinson was telling the truth when he denied being the driver) are both 'sufficiently similar' and 'sufficiently material' for collateral estoppel and the Double Jeopardy Clause to apply." Id. at 1069.   The court also explained, "[a] factfinder's determination that the government failed to carry its burden on an issue in the first proceeding has preclusive effect in a subsequent proceeding raising that same issue, provided both proceedings are governed by the same standard of proof." Id.

17

Below, the undersigned turns to petitioner's arguments in this case.

18

E.  Application

19
20
21
22
23

Petitioner's first argument is that because he was acquitted of murder and robbery, admitting evidence that he committed those crimes at his second trial on the conspiracy and residential burglary charges violated his rights under the Double Jeopardy Clause.  In rejecting this argument on appeal, the California Court of Appeal first found that petitioner had waived this argument by failing to raise it before the trial court, writing:

24
25
26
27
28

> At no time did defense counsel offer the argument now being made on appeal, namely, that while the prosecution was not collaterally estopped from prosecuting defendant for the unresolved offenses, collateral estoppel limited the evidence that could be introduced to prove its case.  Having failed to raise this argument in the trial court, defendant is precluded from doing so here.  (Evid. Code § 353; see also People v. Morales (2003) 112 Cal.App.4th 1176, 1185.)

18

1   Magana, 2007 WL 1277191, at *2.

2         As noted above, in his state court appeal petitioner alternatively argued that if his

3   collateral estoppel argument had been waived, his trial counsel had provided him ineffective

4   assistance by waiving it.  The California Court of Appeal rejected this contention as well, because

5   it found that petitioner's underlying collateral estoppel argument lacked merit and therefore his

6   trial counsel's failure to raise it did not constitute deficient performance.

7         First, it is clear that petitioner did, in fact, specifically argue to the state trial court that

8   evidence of his commission of the murders and robbery should not be admitted at his second trial

9   because he had been acquitted of those charges at his first trial.  In this regard, prior to his second

10  trial on the conspiracy and residential burglary charges, counsel on behalf of petitioner filed a

11  motion in limine which, in relevant part, specifically sought the exclusion of

12          all evidence under collateral estoppel that the prosecutor intends to
    introduce through witnesses Scott Fausett or Brandon Berreth
13  relating to the issues previously decided in defendants favor by way
    of his acquittal of the homicide and robbery charges at the previous
14  trial.  (Ashe v. Swenson (1970) 397 U.S. 436).

15  (CT at 923).  Thus, contrary to the finding and conclusion of the California Court of Appeals, it is

16  clear that petitioner indeed argued to the trial court that collateral estoppel limited the

17  prosecution's introduction of evidence at his second trial.  Moreover, petitioner's trial brief

18  submitted prior to the commencement of his second trial specifically argued that the collateral

19  estoppel doctrine barred the relitigation of ultimate issues of fact in his second trial.  (See CT at

20  836-37.)[3]

21        Because the California Court of Appeal incorrectly concluded that petitioner waived his

22  Double Jeopardy argument, the state court's decision in this regard is "based on an unreasonable

23   

24  [3]  The California Court of Appeal noted that, after the trial court denied petitioner's motion to
    dismiss the conspiracy and burglary charges on collateral estoppel grounds, the trial judge asked
25  defense counsel whether there was any difference between the defense's motions to dismiss and
    to exclude evidence.  Magana, 2007 WL 1277191, at *2.  Defense counsel merely replied, "None,
26  Your Honor."  (RT at 142.)  From this, the state appellate court somehow reached the conclusion
    that the argument presented in the motion to exclude evidence had been waived.  2007 WL
27  1277191, at *2.  Such was not the case.  Rather the two motions, based on the same legal
    principles, sought two different remedies – either dismissal of the re-filed charges or the
28  exclusion of evidence at the second trial on collateral estoppel grounds.

1   determination of the facts in light of the evidence presented in the State court proceeding." 28

2   U.S.C. § 2254(d)(2).  As explained above, where a state court decision does not meet the criteria

3   set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's

4   claims.  Delgadillo, 527 F.3d at 925.  Regardless of the standard of review to be applied here,

5   under the circumstances of this case the undersigned concludes that petitioner is entitled to

6   federal habeas relief on his Double Jeopardy claim.

7          The question before this federal habeas court is whether the admission of evidence at

8   petitioner's second trial on the conspiracy and residential burglary charges indicating that he had

9   in fact robbed and murdered the Dahnkes violated his rights under the Double Jeopardy Clause.

10  The California Court of Appeal held that the admission of this evidence at the second trial was

11  proper because the ultimate facts placed at issue by the robbery and murder charges at petitioner's

12  first trial were different from the ultimate issues of fact at issue in his retrial on the conspiracy

13  and residential burglary charges.  In support of its conclusion that the collateral estoppel doctrine

14  did not prohibit the admission of evidence that had been introduced at a trial that resulted in

15  petitioner's acquittal from being admitted for all purposes in his subsequent retrial on the charges

16  upon which the first jury was unable to reach a verdict, the state appellate court relied upon the

17  Supreme Court's decision in Dowling.  As explained below, the California Court of Appeal's

18  decision was an unreasonable application of clearly established federal law.

19         At petitioner's first trial, the jury was instructed that petitioner was guilty of murder and

20  robbery if he aided and abetted another in the commission of those crimes, or in any crime that

21  was a natural and probable consequence of the crime originally aided and abetted.  The jury was

22  also instructed that if it found that petitioner aided and abetted a robbery, and the crime of murder

23  was a natural and probable consequence of robbery, he was guilty of murder.  Moreover, the jury

24  was also instructed that petitioner was guilty of murder if he killed with malice aforethought or

25  during the commission or attempted commission of a residential robbery or robbery.  As to the

26  robbery charge, the jury was instructed that the commission of the crime continued as long as the

27  stolen property was being carried away to a place of temporary safety, and thus petitioner was

28  guilty of robbery if he aided and abetted during this time period.

20

The jury is presumed to have followed these instructions in acquitting petitioner of robbery and murder charges.  Thus, the jury at petitioner's first trial determined that the prosecution had not proved beyond a reasonable doubt that petitioner had committed robbery or murder or had aided and abetted his codefendant in committing robbery or murder.  As explained at length by the Supreme Court in Yeager, the fact that the jury failed to reach a verdict on the residential burglary and conspiracy counts does not undermine the preclusive effect of the acquittals rendered on the robbery and murder counts.  557 U. S. at 120 ("The reasoning in Ashe is nevertheless controlling because, for double jeopardy purposes, the jury's inability to reach a verdict on the insider trading counts was a nonevent and the acquittals on the fraud counts are entitled to the same effect as Ashe's acquittal.")  Therefore, regardless of the jury's failure to return verdicts on the burglary and conspiracy charges at the first trial, the jury necessarily found that it had not been proved beyond a reasonable doubt that petitioner had committed robbery or murder or had aided and abetted his codefendant in committing robbery or murder.

The California Court of Appeal found that the "ultimate facts" at issue in the murder and robbery charges upon which petitioner was acquitted were different than the "ultimate facts" at issue at petitioner's retrial on the conspiracy and residential burglary charges.  Therefore, the state appellate court concluded that petitioner's retrial on the conspiracy and burglary charges was not unconstitutional.  The state appellate court's use of the term "ultimate facts" – by which that court apparently meant the essential elements of the crimes charged – in the undersigned's view, reflected a misinterpretation of Double Jeopardy law.  See Castillo-Basa, 483 F.3d at 897 n.4 ("The dissent would restrict the application of collateral estoppel to issues of 'ultimate fact.' . . . Such a restriction is completely without foundation. . . .  Even were the doctrine cabined as the dissent would like, there is no support for the dissent's cramped and piecemeal definition of the term 'ultimate fact'. . . as 'an essential element of the crime.' . . .  An 'ultimate fact' is simply a fact essential to the claim or the defense.  Black's Law Dictionary 629 (8th ed. 2004).") (quotations omitted).  Regardless of the terms used, the state appellate court restricted its analysis to noting that the essential elements of the crimes of which petitioner was acquitted at his first trial differed from the essential elements of the charged crimes at his second trial.  See Magana,

21

1   2007 WL 1277191 at *3.  Of course, it is true that the essential elements of murder and robbery

2   differ from the essential elements of conspiracy and burglary.  But whether the essential elements

3   of those crimes match is not the relevant inquiry here.[4]  In focusing on the wrong question the

4   state appellate court failed to follow the Supreme Court's dictate to apply the collateral estoppel

5   rule with "realism and rationality" rather than the "hypertechnical and archaic approach of a 19th

6   century pleading book."  Ashe, 397 U.S. at 344.  Instead the state appellate court in this case

7   stated:

8        The jury's findings in the case resolved two ultimate issues:
         whether defendant was guilty of murder and whether defendant was
9        guilty of robbery.  Those ultimate facts were different from those at
         issue in the retrial, namely, whether defendant committed a
10       burglary and whether defendant conspired to commit murder,
         robbery and burglary.

11

12   2007 WL 1277191, at *4.

13        However, whether a defendant has committed a particular crime is a legal conclusion

14   derived from a jury's interpretation and synthesis of evidence and application of the law as

15   instructed by the trial judge.  It is not an issue of fact.  Rather than merely discussing the essential

16   elements of the crimes at issue, the state appellate court should have "examine[d] the record of a

17   prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter,

18   and conclude[d] whether a rational jury could have grounded its verdict upon an issue other than

19   that which the defendant seeks to foreclose from consideration."  Ashe, 397 U.S.  at 344.

20   Contrary to the instructions of the Supreme Court, the state court's analysis of the Double

21   Jeopardy issue in this case was thus formalistic and speculative instead of realistic and rational.

22        Here, the  "not guilty" verdicts rendered at petitioner's first trial meant that a jury had

23   already found that it had not been proven beyond a reasonable doubt that he had killed or robbed

24   the Dahnkes or had aided and abetted Jones in killing or robbed the Dahnkes.  Within the context

25   of the testimony presented at that first trial, that meant that the jury was not convinced beyond a

26

27   [4]  It would be the correct inquiry under the Blockburger test, discussed above, only if the issue
     was whether the second trial was permissible at all.  However, that is not the issue petitioner
28   raised on direct appeal, nor is it the issue petitioner has raised in the pending petition.

1    reasonable doubt that petitioner's version of events – that he did not go to the Dahnkes' residence

2    with the intent to murder or rob, or assist Jones in murdering or robbing, and did not murder or

3    rob or assist those crimes once he was there – was untrue.  If the jury had believed that it had

4    been proved beyond a reasonable doubt that petitioner had plotted with Jones to kill or rob the

5    Dahnkes, they could not have rendered a not guilty verdict on the robbery and murder charges.

6    Therefore, it was determined at petitioner's first trial that it had not been proven beyond a

7    reasonable doubt that petitioner had planned or carried out the murder or robbery of the victims,

8    and the prosecution should have been estopped in the second trial from presenting evidence that

9    petitioner was guilty of murder or robbery.

10        The California Court of Appeal's reliance on <u>Dowling</u> in reaching its conclusion was also

11   misplaced.  The Supreme Court's decision in  <u>Dowling</u> does not permit the indiscriminate

12   admission of evidence of a past crime despite a defendant's acquittal of that crime.  In <u>Dowling</u>,

13   the defendant was tried and acquitted of a burglary during which he allegedly wore a ski mask

14   and carried a small handgun.  493 U.S. at 344–45.  At a subsequent trial for a bank robbery,

15   during which the defendant was again accused of wearing a ski mask and carrying a small

16   handgun, the government introduced evidence of the prior burglary to demonstrate modus

17   operandi.  <u>Id.</u> The Supreme Court held that such evidence was not barred by collateral estoppel

18   because there were different burdens of proof involved in the two proceedings; to wit, while the

19   jury at the first trial had to find guilt beyond a reasonable doubt, the evidence at the second trial

20   was admissible so long as the jury could reasonably conclude under Federal Rule of Evidence

21   404(b) that "the act occurred and that the defendant was the actor."  <u>Id.</u> at 348–49.  The Supreme

22   Court also noted that, unlike in <u>Ashe</u>, the prior acquittal did not determine an ultimate issue in the

23   second case.  <u>Id.</u> at 348.  Finally, the trial judge in <u>Dowling</u> gave two limiting instructions

24   explaining that the defendant had been acquitted of robbing the witness and that the evidence was

25   being admitted for a limited purpose.  <u>Id.</u> at 346.  Here, in contrast, evidence that petitioner had

26   committed murder and robbery was admitted under the same burden of proof – beyond a

27   reasonable doubt – at both of his trials.  Moreover, the jury at petitioner's second trial was given

28   no curative instruction – that is, petitioner's jury at his second trial was not instructed that

1    petitioner had previously been acquitted of both the murders and robbery.

2          The case of United States v. James, 109 F.3d 597 (9th Cir. 1997) is instructive in this

3    regard.  In James, the defendant argued that a conspiracy charge against him should be dismissed

4    because it charged as overt acts bank robberies of which he had previously been acquitted.  The

5    Ninth Circuit held that while the defendant could still be tried for conspiracy to commit robbery,

6    even though he had been acquitted of robbery, the prosecution was precluded from alleging as

7    overt acts and introducing evidence that the defendant had committed the robberies of which he

8    had been acquitted.  Id. at 601.  Rather, the Ninth Circuit held that the government could only

9    proceed by alleging overt acts independent of the bank robbery charges of which the defendant

10   had been acquitted.  Id. at 601-02.  As previously noted, here petitioner does not argue in his

11   federal habeas petition that under Blockburger his previous acquittals on the murder and robbery

12   charges categorically precluded his retrial on the conspiracy and burglary charges upon which his

13   first jury had failed to reach a verdict.  Rather, he persuasively argues only that it violated his

14   rights under the Double Jeopardy Clause for him to be retried on the conspiracy and burglary

15   charges based on the same testimony admitted at his first trial that he had in fact murdered or

16   robbed the victims – crimes for which he had already been acquitted by the jury at his first trial.

17         Petitioner also argued on appeal in state court that the charged firearm enhancements

18   which were the subject of his second trial were barred by collateral estoppel.  To review,

19   petitioner's second trial was on:  (1) charges of conspiracy to commit murder, burglary and

20   robbery with specified overt acts, along with two enhancement allegations for "intentionally and

21   personally discharg[ing] a firearm . . . and proximately causing great bodily injury" to each of the

22   Dahnkes; (2) one enhancement for personally using a firearm "in the commission" of the

23   conspiracy "and also causing the above to become a serious felony;" and two enhancements for

24   "personally inflict[ing] great bodily injury" upon each of the Dahnkes; and (3) with first degree

25   burglary of an occupied residence with firearm use and two great bodily injury enhancements.

26   (CT at 916-920.)  The jury at petitioner's second trial convicted him of both the conspiracy and

27   robbery counts and found that all of the enhancement allegations were true.  (CT at 1122-24,

28   1125-40.)

1    The state appellate court's analysis of petitioner's Double Jeopardy/collateral estoppel

2    challenge to the application of the sentencing enhancements was flawed in the same way as its

3    analysis of whether collateral estoppel barred the prosecution's reliance on the testimony of

4    Fausett and Berreth at petitioner's second trial.  Again, the state appellate court did not abide the

5    Supreme Court's mandate in Ashe to apply the collateral estoppel doctrine in a realistic, rational

6    manner, keeping in mind the evidence as reflected in the trial record.  Instead, the state appellate

7    court engaged in what it characterized as "speculative scenarios" in an attempt to reconcile the

8    first jury's verdict that petitioner was not guilty of murder or robbery with the charges in the

9    second trial that petitioner had committed first degree burglary and had personally and

10   intentionally used a firearm causing great bodily injury to each of the Dahnkes, causing the

11   conspiracy to commit murder, robbery and burglary to become a serious felony.

12         Thus, the state appellate court stated that "close inspection of the record reveals that the

13   acquittals on the murder charges do not necessarily mean the jury found that defendant did not

14   shoot either victim."  Magana, 2007 WL 1277191 at *6.  It was "conceivable," the court wrote,

15   that the first jury concluded that they could not rule out the following scenario:  petitioner had

16   never intended to rob or burglarize the victims, but shot them "as reflexive reaction" to Jones'

17   shots "without intent to kill and in a manner that would not have resulted in death to either of the

18   victims"; and that because petitioner did not plan the crimes with Jones, Jones' shooting of the

19   victims was not a natural and probable consequence of a common plan."  Id.  However, no

20   witness had ever testified to such a version of the facts and no attorney had ever argued that this

21   scenario was what had occurred.  Rather, the two versions presented to the jury at petitioner's

22   trial were:  (1) the prosecution theory that petitioner had planned with Jones to kill and rob

23   Dahnke and they had carried out the plan; and (2) the defense theory that petitioner had gone to

24   Dahnke's apartment to buy marijuana and Jones had shot and killed the victims without

25   petitioner's involvement.  Accordingly, the state court's approach is simply unreasonable in light

26   /////

27   /////

28   /////

25

1  of the evidence and arguments presented at petitioner's trial.[5]  Moreover, even if the

2  "conceivable" scenario laid out by the state appellate court was accurate – that is, the first jury

3  acquitted petitioner on the murder and robbery charges because they found that there was a

4  reasonable doubt that he did not plan to commit the crimes with Jones and did not intentionally

5  discharge a firearm – then the prosecution should have been precluded from retrying petitioner

6  for conspiracy and for intentionally using a firearm to inflict great bodily injury.  The state's

7  failure to prove its case during the first trial does not permit it to take a mulligan or treat the first

8  prosecution as a dry run.  Castillo-Basa, 483 F.3d at 893; see also In re Moi, ___ Wn.2d___,

9  ___P.3d___, 2015 WL 6549160 (Wash. Oct. 29, 2015) (Under Double Jeopardy and the collateral

10  estoppel doctrine as interpreted in Dowling, Ashe and Wilkinson and the facts of the case, the

11  acquittal of the defendant for unlawful possession of a specific firearm barred his subsequent

12  prosecution for murder committed with the same firearm.)

13       The state appellate court wrote that while its proposed scenario was "speculative, the point

14  is that it is conceivable and, hence, it is just as speculative to say the jury necessary found that

15  defendant did not shoot either victim." Magana, 2007 WL 1277191 at *7.  However, merely

16  because two scenarios are conceivable does not mean that they are equally probable.  Here, in

17  light of the testimony given and the evidence received at trial, it is overwhelmingly more likely

18  that the jury at the first trial found that petitioner may have been telling the truth – that is, that he

19  did not plan with Jones to kill or rob the Dahnkes and in fact did not shoot them or take their

20  marijuana.  Certainly that is far more likely than that a factual scenario which neither the

21  prosecution nor the defense suggested to the jury and that the evidence did not support, occurred

22  – that is, petitioner shot the victims as a "reflexive reaction" without intent to kill, in a non-fatal

23

---

24  [5]  Although a given scenario may be "conceivable," determining whether a defendant may be
    retried must not an abstract logical exercise, divorced from the facts of the case.  See Wilkinson,

25  800 F.3d at 1069 (rejecting the state's offer of three possible bases upon which the traffic court
    judge could have rendered his not guilty verdict because "the 'single rationally conceivable' basis

26  on which he could have done so was that Wilkinson was not the driver"); Wade v. Timmerman-
    Cooper, 785 F.3d 1059, 1071 (6th Cir. 2015) (petitioner's conjecture as to alternative theories the

27  state could have used to support his conviction was irrelevant because "[w]hat matters for the
    purposes of collateral estoppel is what the State did argue.").

28

1   manner.  Accordingly, the undersigned concludes that the firearm enhancements were imposed in

2   violation of petitioner's constitutional rights, and should be stricken.

3        The undersigned is compelled to conclude that the California Court of Appeal's decision

4   in this case was contrary to clearly established federal law.  Petitioner's conviction and sentence

5   were imposed in violation of the constitutional protection against double jeopardy.  His

6   conviction and sentence should be vacated.  Any retrial must be conducted in accordance with the

7   constitutional principles discussed above.

8                       **CONCLUSION**

9        The undersigned has determined that the interests of justice require appointment of

10  counsel for petitioner in all further proceedings in this action.  See 18 U.S.C. § 3006A(a)(2)(B);

11  see also Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  The Federal Defender is therefore

12  appointed to represent petitioner for all further proceedings including the filing of objections or a

13  reply to objections filed in response to these findings and recommendations.

14       For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's

15  application for a writ of habeas corpus be granted, and that his conviction and sentence be

16  vacated.  Subject to the following exception, proceedings in the state court leading to retry

17  petitioner shall be commenced within 60 days.  However, if either party appeals the judgment in

18  this case, no criminal proceedings need be commenced until 60 days after the issuance of the

19  mandate following a final appellate decision or the denial of a petition for writ of certiorari,

20  whichever occurs later.

21       These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within seven days after service of the objections.  Failure to file

27  objections within the specified time may waive the right to appeal the District Court's order.

28  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

1  1991).  In any objections he may elect to file petitioner may address whether a certificate of

2  appealability should issue in the event he files an appeal of the judgment in this case.  See Rule

3  11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

4  certificate of appealability when it enters a final order adverse to the applicant).

5  Dated:  October 31, 2015

6

7  _Dale A. Drozd_
   _____
   DALE A. DROZD
8  UNITED STATES MAGISTRATE JUDGE

   dad1.habeas
9  magana.08cv1706.hc.3(2).wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28